# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

VECTOR CORPORATION,

        Plaintiff,

vs.

CHEM LAB PRODUCTS, INC.,

        Defendant.

No. 08-CV-91-LRR

**ORDER**

_____

### *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *FACTUAL FINDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

     *A.*     *Background Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

     *B.*     *Contract* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

     *C.*     *Miscellaneous Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*III.*   *RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . *5*

*IV.*   *SUBJECT-MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . *5*

*V.*    *MOTION TO DISMISS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

     *A.*     *Personal Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

          *1.*    *Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

          *2.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

              *a.*    *Defendant's arguments* . . . . . . . . . . . . . . . . . . . *9*

              *b.*    *Plaintiff's arguments* . . . . . . . . . . . . . . . . . . . *10*

              *c.*    *Court's conclusions* . . . . . . . . . . . . . . . . . . . . *11*

     *B.*     *Discretionary Venue Transfer* . . . . . . . . . . . . . . . . . . . . . . . *14*

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

# I.  INTRODUCTION

The matter before the court is Defendant Chem Lab Products, Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion for Change of Venue" ("Motion") (docket no. 8).

# II.  FACTUAL FINDINGS

Viewed in the light most favorable to Plaintiff Vector Corporation, *see Romak USA, Inc. v. Rich*, 384 F.3d 979, 983-84 (8th Cir. 2004) (setting forth standard for motion to dismiss for lack of personal jurisdiction), the facts are these:

## A.  Background Facts

Plaintiff manufactures and sells industrial presses from its plant in Marion, Iowa. Plaintiff custom manufactures its presses to meet each customer's specific needs. The custom manufacturing process typically takes approximately four to six months to complete and consists of preliminary engineering design work, procurement of parts and assembly.

Defendant manufactures and sells swimming pool maintenance products, including swimming pool chemicals. Defendant sells its products through the distribution centers of big-box retailers. The vast majority of the big-box retailers at which Defendant's products are sold are located on the West Coast of the United States.

For example, Defendant manufactures "Maintenance Kits" for above-ground swimming pools. Target Corporation ("Target") sells Defendant's Maintenance Kits at all of its big-box retail stores in Iowa. Defendant ships Maintenance Kits to Target's distribution centers in Iowa and Kansas with full knowledge that Target will then transport the Maintenance Kits to its big-box retail stores throughout Iowa for sale to consumers.

The Maintenance Kits are specifically registered for sale in Iowa. However, Defendant sells relatively few Maintenance Kits in Iowa. For example, Defendant sold $44,000 worth of Maintenance Kits in Iowa in 2007. In comparison, Defendant's total sales for 2007 were approximately $50 million.

## B. Contract

On July 2, 2006, Mr. Mark Luetger, one of Defendant's employees, searched the Internet for custom press manufacturers. Mr. Luetger found Plaintiff's website, on which Plaintiff advertised the ability to manufacture a press that could produce a 3" "tablet." The precise nature and function of "tablets" are unclear. However, Maintenance Kits do not include "tablets" of any kind, and Defendant does not sell and is not registered to sell "tablets" in Iowa.

Mr. Luetger contacted Plaintiff through Plaintiff's website and enquired about purchasing one of Plaintiff's custom presses. On July 5, 2006, one of Plaintiff's sales managers responded to Mr. Luetger's enquiry. The two men discussed Defendant's specific product needs on the telephone. Mr. Luetger specified Defendant's required custom features: a hardened steel wear plate, hardened bushings, an adjustable upper pressure roll, an air overload system, an additional set of fill cams, barrymounts and special paint.

On July 10, 2006, one of Plaintiff's employees emailed Mr. Luetger a "Proposal for Vector/Colton Model 270 Rotary Compaction Press with customized Optional Features and Equipment" ("Proposal"). *See* Ex. A to Petition at Law ("Petition") (docket no. 1), at 8-13. The Proposal offered payment terms as follows: "35% down payment with [P]urchase [O]rder, 35% progress payment prior to shipment, and [the balance] thirty (30) days after shipment." *Id*. at 12. Plaintiff informed Defendant that it would take approximately five to six months to build the Press. Plaintiff estimated that customizing Defendant's Press would require 44 engineering labor hours and 248 non-engineering labor hours.

For the next two to three months, various representatives of Plaintiff and Defendant negotiated the terms of the Proposal via email, fax and telephone. On August 24, 2006, Defendant sent Plaintiff a Purchase Order, in which it accepted Plaintiff's Proposal.

Defendant specifically requested delivery of the Press "F.O.B. Marion, Iowa"[1] on or before January 15, 2007. On September 8, 2006, Plaintiff accepted the Purchase Order and faxed Defendant an Order Acknowledgment for the customized 3" tablet press.

Plaintiff manufactured the Press according to Defendant's specifications. Plaintiff's employees spent over 400 hours customizing the Press for Defendant. While Plaintiff was building the Press, the parties continued to contact each other via email and telephone. For example, in November of 2006, Mr. Luetger asked Plaintiff to email him photographs of the Press, and Plaintiff complied. Defendant also remitted the 35% down payment and the 35% progress payment. In February of 2007, one of Plaintiff's senior project managers emailed Mr. Luetger and invited him to visit Plaintiff's plant in Marion to inspect the Press. Mr. Luetger declined the invitation and never visited Iowa.

On March 3, 2007, Plaintiff shipped the Press to Defendant at a cost of $4190.00. The Press has dimensions of 75" x 75" x 80" and weighs 7415 pounds. On or about March 30, 2007, Defendant received the Press in California.

The total cost of the Press was $246,030.00. Plaintiff demanded payment of the remaining balance due ($97,067.23) from Defendant, but Defendant refused to pay. Defendant claims the Press does not work. In light of Defendant's failure to pay in full, Plaintiff retains title to the Press. Defendant "agree[d] to protect [Plaintiff's] interest by maintaining full insurance thereon." Ex. A to Petition, at 12.

### C. Miscellaneous Facts

At all relevant times, Plaintiff and Defendant only communicated via email, phone, facsimile, mail or freight. No representative of Defendant ever traveled to Iowa in connection with its purchase of the Press from Plaintiff.

Further, other than expressly stated herein, Defendant had no other contacts with

---

[1] "F.O.B." means "Free On Board." *FTC v. Cement Inst.*, 333 U.S. 683, 696 (1948); *Robertson v. Bradbury*, 132 U.S. 491, 494 (1889); Iowa Code § 554.2319 (2007).

Iowa. Defendant is not registered to do business in Iowa; does not have a registered agent in Iowa; has never owned or leased property in Iowa; has never held any bank accounts in Iowa; has never before been sued or sued in Iowa; has never committed a tort in Iowa; and has never expressly consented to jurisdiction in Iowa.

## III. RELEVANT PRIOR PROCEEDINGS

On June 19, 2008, Plaintiff filed the Petition against Defendant in the Iowa District Court in and for Linn County. The sole count of the Petition alleges Breach of Contract, in violation of Iowa common law.

On July 17, 2008, Defendant removed the Petition to this court, pursuant to 28 U.S.C. §§ 1441 and 1446. Defendant invoked this court's diversity subject-matter jurisdiction, 28 U.S.C. § 1332(a)(1).

On August 18, 2008, Defendant filed the Motion. On September 4, 2008, Plaintiff filed a Resistance (docket no. 9). On September 22, 2008, Defendant filed a Reply (docket no. 14).

Plaintiff requests oral argument on the Motion. The court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

## IV. SUBJECT-MATTER JURISDICTION

The court finds that it has diversity subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1332(a)(1). The parties are diverse. Plaintiff is an Iowa corporation with its principal place of business at Marion, Iowa. Defendant is a California corporation with its principal place of business at Ontario, California. The amount in controversy exceeds $75,000, exclusive of interest and costs. In the Petition, Plaintiff seeks $97,067.23, as well as costs, interest, finance charges and attorneys' fees.

## V. MOTION TO DISMISS

In the Motion, Defendant argues that this case should not be tried in the Northern District of Iowa. Defendant contends the court's exercise of personal jurisdiction over it

would not comport with due process and asks the court to dismiss the Petition without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, Defendant argues that the court should transfer this case to "the appropriate federal district court in the State of California," pursuant to 28 U.S.C. § 1404(a). Motion (docket no. 8), at 2. Plaintiff resists the Motion in its entirety.

## A. Personal Jurisdiction

### 1. Legal standards

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by . . . the Due Process Clause of the Constitution." *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005) (citing *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)).[2] "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "To satisfy due process a defendant must have sufficient minimum contacts with the forum state." *Romak*, 384 F.3d at 984. The contacts with the forum state must be more than "random," "fortuitous" or "attenuated." *Burger King,* 471 U.S. at 475; *accord Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984) (requiring contacts to be more than "random," "isolated" or "fortuitous"). "[T]he Defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being

_____

[2] Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ. P. 1.306; *see also Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (recognizing same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (same)*; Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa Ct. App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution."). Therefore, the court only needs to examine whether the exercise of personal jurisdiction comports with due process. *Hicklin*, 959 F.2d at 739.

haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 295, 297 (1980). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).[3]

After establishing that a defendant purposefully established such minimum contacts with the forum state, a court must still consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320); *see also Ferrell*, 393 F.3d at 790-91 (applying same two-step analysis); *Dakota Indus. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389-90 (8th Cir. 1991) (same). The Supreme Court has stated courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Based upon Supreme Court precedents, the Eighth Circuit Court of Appeals instructs courts to consider five factors. *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708

---

[3] The Supreme Court has distinguished between two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984). Specific jurisdiction refers to jurisdiction over causes of action "arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. On the other hand, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State . . . exercise[s] 'general jurisdiction' over the defendant." *Id.* at 414 n.9. When general personal jurisdiction is asserted, the non-resident defendant must be engaged in "continuous and systematic" contacts within the forum state. *Id.* at 416.

F.2d 1338, 1340 (8th Cir. 1983).  Those factors are:

> (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998); *see, e.g., Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them).  The first three factors are the most important.  *Dakota Indus.*, 946 F.2d at 1390; *accord Dever*, 380 F.3d at 1074 ("Significant weight is given to the first three factors.").  The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision."  *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987).  Few answers to jurisdictional questions "will be written in black and white." *Burger King*, 471 U.S. at 486 n.29 (internal quotation omitted).

The present case revolves around a contract between a nonresident defendant and a resident plaintiff.  In such a circumstance, due process is satisfied when the defendant "reach[es] out beyond one state and create[s] continuing relationships and obligations" with the plaintiff.  *Id.* at 473 (citing *Traveler's Health Ass'n. v. Virginia*, 339 U.S. 643, 647 (1950)).  The mere fact the defendant entered into a contract with a resident of the forum state is not in itself sufficient to satisfy due process.  *See id.* at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (emphasis in original)).  To determine whether the defendant purposely established minimum contacts with the forum when a contract is involved, the court must consider the circumstances of the contract, including the "prior negotiations," "contemplated future consequences," "the terms of the contract," and "the parties' actual course of dealing."  *Id.* at 479; *accord St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d

587, 591 (8th Cir. 2001) (directing district courts to consider the same four factors in contract cases).

Plaintiff, as the party seeking to establish personal jurisdiction over Defendant, bears the burden to prove it exists. *Romak*, 384 F.3d at 983-84. At this early stage in the proceedings, however, Plaintiff need not prove by a preponderance of the evidence that the court may exercise personal jurisdiction over Defendant. *Id.* at 983. Rather, Plaintiff need only make a *prima facie* showing of jurisdiction. *Id.* Plaintiff may use affidavits, exhibits, or other evidence to meet its burden. *Id.* Further, the court must view the evidence in the light most favorable to Plaintiff, as the nonmoving party. *Id.* at 983-84.

With these principles in mind, the court examines whether it may exercise personal jurisdiction over Defendant.

### 2.    *Analysis*

#### a.    *Defendant's arguments*

Defendant asserts the court does not have personal jurisdiction. Defendant repeatedly characterizes its contacts with Iowa as "nominal," Brief in Support of Motion (docket no. 8-2), at 8, 13 & 16. With respect to its Iowa contacts, Defendant points out: (1) Defendant is a California corporation with the vast majority of its sales outside of Iowa; (2) all of Defendant's communications with Plaintiff regarding the Press were by phone, email, fax or post; (3) none of Defendant's representatives ever physically entered Iowa in connection with the Press and did not come to Iowa to pick up the Press; (4) Defendant has no officers or facilities in Iowa; (5) the parties contracted for a one-time purchase of the Press and did not establish a course of dealing or an ongoing future relationship; (4) Defendant's other contacts with Iowa in connection with the Maintenance Kits "are best summarized as the placement of products into the stream of commerce via distribution agreements which result in the sales of its products in Iowa," *id.* at 12; (6) "sales of [Defendant's] products in Iowa are of a limited nature in both quantity and quality," *id.*

at 13, and pale in comparison to Defendant's sales elsewhere; (7) Defendant has no bank accounts in Iowa; (8) Defendant does not own or lease property in Iowa; (9) Defendant has no employees or representatives in Iowa; (10) Defendant is not registered to do business in Iowa; (11) Defendant has never participated in another lawsuit in Iowa; (12) Defendant has never committed a tort aimed at residents of Iowa; and (13) Defendant has not designated an agent to receive service of process in Iowa.

Defendant opines that this case could also be tried in California. Defendant posits that trying this case in Iowa would be inconvenient. Defendant points out that the Press, "the key piece of evidence," *id*. at 15, is expensive and difficult to move. Defendant contends "[i]t is likely that key fact witnesses, expert witnesses, and even the fact-finder may need to inspect or view the Press in order to fairly adjudicate the merits of this case." *Id*.

### b. *Plaintiff's arguments*

Plaintiff contends the court may exercise personal jurisdiction over Defendant. With respect to Defendant's Iowa contacts, Plaintiff points out (1) Defendant sought out and contacted Plaintiff regarding the purchase of the Press; (2) Defendant knew all along that Plaintiff was located in Iowa; (3) Defendant had numerous conversations and negotiations via fax, telephone, email and post with Plaintiff's representatives, who were located in Iowa; (4) Defendant entered into a contract with Plaintiff, an Iowa company, for purchase of the Press; (5) the Press was custom manufactured in Iowa at great expense and with great labor in Iowa; (6) Defendant's Maintenance Kits are registered for sale in Iowa; (7) Defendant's Maintenance Kits are sold at Target stores throughout Iowa with Plaintiff's full knowledge and consent; (8) Defendant delivers its Maintenance Kits to Target's distribution center in Iowa; (9) title to the Press remains in Iowa; (10) the Press was delivered "F.O.B. Marion, Iowa"; and (11) Defendant knew Plaintiff's major operations, including credit authorization, customer support, manufacturing and billing, were all

located in Iowa.

Plaintiff posits that it would be equally convenient to litigate this matter in Iowa or California.  Plaintiff states that litigation need not occur near the physical location of the Press.  Plaintiff opines that any expert witness would be required to travel to the Press and the fact-finder would not be required to physically inspect the Press.

### c.      Court's conclusions

Considering the totality of the circumstances, the court concludes Plaintiff has made a *prima facie* showing of personal jurisdiction.  The court finds Plaintiff reasonably could have expected to be "haled" into an Iowa court.  *World-Wide Volkswagen*, 444 U.S. at 297.  Defendant actively pursued a business relationship with Plaintiff, an Iowa resident. *See St. Jude*, 250 F.3d at 591-92 (recognizing the fact that an out-of-state corporation "pursued a business relationship" with Minnesota plaintiff was a factor weighing in favor of finding jurisdiction).  Defendant did so with full knowledge that Plaintiff was an Iowa corporation and thus purposefully directed its actions at a resident of the forum state.

The instant litigation arises out of and relates to a contractual relationship Defendant actively pursued.  In the Petition, Plaintiff alleges breach of contract and injuries that arise out of and relate to Defendant's active solicitation of Plaintiff's business. Defendant had fair warning it might be sued in Iowa.  *See Burger King*, 471 U.S. at 472 (The "fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." (internal quotations omitted)).

Prior to and during the course of performance of the parties' contract, Defendant telephoned, emailed and faxed Plaintiff.  *See St. Jude*, 250 F.3d at 592 (finding telephone calls and written correspondence weighed in favor of exercising personal jurisdiction). Further, the Press was delivered "F.O.B. Marion, Iowa."   "F.O.B. Marion, Iowa" denotes that Defendant was legally responsible for the Press during shipment.  *Ryko Mfg.*

11

*Co. v. Eden Servs.*, 823 F.2d 1215, 1225 n.4 (8th Cir. 1987) (citing Iowa Code §§ 554.2319, 2401 & 2509)). Defendant thus assumed responsibility for the Press in Iowa. *See Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 820 & n.2 (8th Cir. 1994) (holding that delivery terms are relevant to the jurisdictional analysis).

Although the Press is physically located in California, title remains in Iowa. In the case at bar, then, not only is the cause of action related to property titled in the forum state, but such property is also the subject matter of the litigation. This fact also weighs in favor of the exercise of personal jurisdiction. *Cf. Shaffer v. Heitner,* 433 U.S. 186, 207-08 (1977) ("[T]e defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.").

It is true that the parties contracted for a single item and did not establish a course of dealing. However, the contract required a substantial amount of work to be done in Iowa over many months and with Defendant's continued input; Defendant did not simply order an item of clothing or a bottle of wine on the Internet. More importantly, the terms of the parties' contract anticipated that Defendant might have continuing ties to Iowa. In the event of a dispute over payment, the contract not only vested title in the Press with Plaintiff in Iowa but also required Defendant to purchase insurance on the Press.

The court recognizes that many of the reasons Defendant cites in its Motion weigh against the exercise of personal jurisdiction in Iowa. *See, e.g., Jarvis & Sons, Inc. v. Freeport Shipbuilding & Marine Repair, Inc.*, 966 F.2d 1247, 1250 (8th Cir. 1992) (recognizing that the fact that a defendant had no office, agent, representative or employees in forum state weighed against exercise of jurisdiction). The court, however, cannot conclude that Defendant's contacts with Iowa are "random," "fortuitous" or "attenuated." Defendant purposely directed its actions at an Iowa business and maintains a sizeable property interest in a Press that is titled in Iowa and insured at the behest of and partially on behalf of an Iowa corporation. Defendant has committed acts "by which [it]

12

purposefully avail[ed] itself of the privilege of conducting activities within [Iowa, and, thus, invoked] the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citing *Hanson,* 357 U.S. at 253). Defendant may not avoid jurisdiction simply because none of its employees, agents or representatives ever physically entered Iowa. *Id.* at 476. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* Defendant cannot turn back the clock to the Twentieth Century.

The court's assertion of jurisdiction does not offend notions of "fair play and substantial justice." *Dakota Indus.*, 946 F.2d at 1389. When the nature and quality of Defendant's contacts with Iowa are coupled with the tight nexus between those contacts and this cause of action, the court's assertion of jurisdiction is fair and just. *Id.* Because it reached out beyond California, Defendant should reasonably expect to be haled into an Iowa court. *Burger King*, 471 U.S. at 473.

*Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309 (8th Cir. 1982) bears some similarity to the instant case but does not require a different result. In *Scullin Steel*, the Eighth Circuit Court of Appeals held that a nonresident buyer could not be haled into court in Missouri. 676 F.2d at 314. Plaintiff, a resident of Missouri, sold goods to the nonresident buyer "F.O.B. Seller's Plant, St. Louis, Missouri." *Id.* at 310. Plaintiff then shipped the goods from Missouri to the nonresident defendant. *Id.* In rejecting the plaintiff's argument for personal jurisdiction, the Eighth Circuit Court of Appeals pointed out that the plaintiff "in essence relies upon its performance under the contract within the forum to supply the requisite minimum contacts." *Id.* at 313.

*Scullin Steel* is distinguishable for two primary reasons. First, Plaintiff is not relying upon its performance under the parties' contract to supply the requisite minimum contacts. In the case at bar, the nonresident defendant sought out and contacted the

resident plaintiff. Defendant's relationship to Iowa cannot, therefore, be characterized as "random, fortuitous or attenuated" or "offend notions of fair play and substantial justice." *See, e.g. Wells Dairy Inc. v. Food Movers Int'l, Inc.*, 566 F. Supp. 2d 933, 942 (N.D. Iowa 2008) (distinguishing *Scullin Steel* and finding personal jurisdiction in part because that the nonresident defendant "initiated contact" with the resident seller). Second, unlike the nonresident defendant in *Scullin Steel*, Defendant regularly sells products in Iowa. While there is no evidence to support Plaintiff's assertion that Defendant purchased the Press to manufacture tablets for Maintenance Kits, the court cannot ignore these contacts altogether. In other words, the court recognizes that the nature, quality and quantity of these contacts with Iowa are great even though they bear no relation of the cause of action. The fact remains that Defendant "'pour[s] its products[] into a regional distributor with the expectation that the distributor [would] penetrate [the Iowa market].'" *Dever*, 380 F.3d at 1075 (quoting *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998)).

In sum, the court concludes Plaintiff has made a *prima facie* showing that the court may exercise personal jurisdiction over Defendant. Such showing is consistent with the Due Process Clause. Defendant purposefully established the requisite minimum contacts with Iowa, and the assertion of personal jurisdiction comports with fair play and substantial justice.

### B. Discretionary Venue Transfer

Defendant maintains that, even if personal jurisdiction exists, the court should, in its discretion, transfer this case to the appropriate federal district court in California, pursuant to 28 U.S.C. § 1404(a). Such statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Eighth Circuit Court of Appeals has stated that § 1404(a) requires courts to consider "three

general categories . . . when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). A district court, however, is not limited to these three enumerated factors in deciding whether to transfer a case. *Id.* "[S]uch determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* Defendant, as the party seeking transfer, bears the burden of proof. *Id.* at 695-96.

Having considered the arguments presented and the *Terra* factors, the court declines to transfer the case. The court finds the totality of the circumstances does not weigh either for or against transfer. The figurative scales of justice are evenly balanced. For example, just as it is undoubtedly true that it would be more convenient for Defendant and its witnesses to have this case tried in California, it would be equally more convenient for Plaintiff and its witnesses to have it tried here in Iowa. "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* at 697 (internal quotation omitted). Moreover, this case appears to be a relatively simple contract dispute. In this age of modern communication and relatively easy travel, this case can proceed just as easily in Iowa as in California. The court is not convinced that a fact-finder would have to physically inspect the Press to determine whether Defendant breached its contract with Plaintiff. Further, the Eighth Circuit Court of Appeals has recognized that "federal courts give considerable deference to a plaintiff's choice of forum." *Terra,* 119 F.3d at 695. Therefore, the court gives deference to Plaintiff's chosen forum, the United States District Court for the Northern District of Iowa.

For all the foregoing reasons, the court declines Defendant's invitation to transfer this case to California.

## VI.  CONCLUSION

In the light of the foregoing, **IT IS HEREBY ORDERED** that the Motion (docket no. 8) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 5th day of November, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA